IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PAUL CHRISTOPHER DAVIS, ) | |
| ) | Civil Action No. 7:21cv00318 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| J. SHERMAN, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff Paul Christopher Davis, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, alleging that the defendant, Officer J. Sherman, used excessive force against him while he was housed at the New River Adult Detention Center ("NRADC"). The defendant filed a motion for summary judgment arguing that Davis failed to fully exhaust available administrative remedies before filing this action. After reviewing the evidence, the court agrees and will grant the defendant's motion.

I.

Davis alleges that in May 2020, he received a disciplinary charge for getting "too close" to Officer Sherman and consequently spent six weeks in maximum security. (Compl. at 3 [ECF No. 1].) In January 2021, Davis was assigned to a segregation unit. After "about two weeks" in that housing unit, Officer Sherman was also assigned to the unit, and Davis alleges that Sherman started "harassing" him. (*Id.*) On one occasion, in the presence of another officer, Davis claims Officer Sherman "patt[ed Davis] down," told him to remove his shoes, and when he did, Sherman "pulled [Davis's] left arm behind [his] back." (*Id.*) Davis says that the other officer told Officer Sherman that, "[t]here's no need for that, he didn't do anything." (*Id.*)

Davis claims that Officer Sherman then pushed Davis into his cell, and Davis told Sherman that he would "never touch [him] again" as he "would not allow it." (*Id.*) Davis reported the incident to security staff.

Later, on April 20, 2021, Davis states that he refused to let Officer Sherman pat him down and Sherman "got upset." (*Id.*) Davis claims that another officer put Davis in his cell because Officer Sherman had "told [Davis] that [he] was going to get hurt." (*Id.*) Davis alleges that the other officer later told Davis that he "had saved [Davis] from [Officer] Sherman." (*Id.*)

The next day, Davis asked another officer to pat him down and stated that he did not want Officer Sherman to pat him down. Davis states that Officer Sherman overheard Davis's statement, "got angry," turned around, and said "I'll touch you." (*Id.* at 4.) Davis claims that when he told Officer Sherman not to touch him, Sherman "grabbed [his] shoulders," "put [his] left arm behind [his] back," "took his left hand and put it on [Davis's] throat with a quick squeeze [and] dropped his hand to [Davis's] chest." (*Id.*) Davis alleges that although Officer Sherman "grabbed his throat . . . only for a second or two, [] he made [a] mistake." (*Id.*) Davis claims that he kicked his door to get the staff's attention and Officer Sherman charged him with "disobeying [a] direct order." (*Id.*) Davis states that he was found "not guilty" of the disciplinary charge. (*Id.*)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Officer Sherman argues that Davis failed to exhaust available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees and will grant the motion for summary judgment.

### A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process—including time limits—or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim.

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

**B.**

In support of his motion for summary judgment, Officer Sherman filed the declaration of NRADC Superintendent Corbin, a copy of the NRADC's grievance procedure, and Davis's grievance records related to the claims raised in this action. (*See* Corbin Decl. [ECF No. 17-1].) Superintendent Corbin states that the NRADC has implemented a grievance procedure which permits inmates to seek redress of their complaints. Superintendent Corbin attests that, upon Davis's commitment to NRADC, he was advised of the grievance process during his orientation, and was provided a copy of the inmate handbook which also describes the grievance process. The grievance procedure allows inmates to formally express their concerns with NRADC policy, procedures, and/or their treatment "without fear of staff retaliation after other proper means have been used." *Id.* at ¶ 5. According to Superintendent Corbin, all inmates have access to the grievance procedure with the "guaranty against reprisal," and all inmates are afforded the opportunity to appeal a grievance decision. *Id.*

To exhaust the grievance procedure at NRADC, an inmate must complete each step of the process through appeal. Before submitting a grievance, the inmate must attempt to

resolve the problem by submitting an Inmate Request Form to the Housing Unit Officer. If the inmate is dissatisfied with the response to the Inmate Request Form, a written grievance must be submitted within 30 days of the date of the incident. If the inmate is dissatisfied with the grievance response, he must appeal the response within three days after receiving it. Appeal decisions are final.

## C.

The NRADC has implemented a grievance procedure, and Davis was informed of its terms upon his commitment to the NRADC. To bring a claim under 42 U.S.C. § 1983 for the use of force occurring on April 21, 2021, the PLRA required Davis to exhaust the administrative remedies available to him at NRADC. The undisputed evidence shows that on April 27, 2021, Davis submitted Inmate Request #124456291, alleging that an unidentified officer put his hand on Davis's throat. (*Id.* Exhibit D.) An investigator responded to Davis's request form on April 30, 2021, stating that the camera did not show an officer's hand on Davis's throat. *Id.* According to the grievance policy, Davis had 30 days from April 21, 2021, to submit a written grievance regarding this incident, but he failed to do so. Davis also did not file any other inmate request forms or grievances pertaining to the alleged incident involving Officer Sherman on April 21, 2021.

It is undisputed from the record that Davis did not fully exhaust administrative remedies as to his claims in this action. Therefore, the court considers whether administrative remedies were "available" to Davis.

Despite being given the opportunity to respond to Officer Sherman's motion for

summary judgment, Davis has not provided any evidence to suggest, let alone establish, that he was prevented from properly exhausting available administrative remedies "through no fault of his own." Accordingly, the court concludes that remedies were available to Davis. Finding no genuine dispute of material fact on this issue, the court concludes that Davis failed to exhaust available administrative remedies as to his claims raised in this action and, thus, the defendant is entitled to judgment as a matter of law.

### IV.

For the reasons stated, the court will grant the defendant's motion for summary judgment.

The clerk is directed to forward copies of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 7th day of July, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE